IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ARTHUR KINLAW,

    Plaintiff,

v.

NANCY KOZAK, et al.,

    Defendants.

No. C 07-00430 SBA (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

(Docket no. 44)

## INTRODUCTION

Plaintiff Arthur Kinlaw, who is currently incarcerated at the Attica Correctional Facility in New York, filed this pro se civil rights complaint under 42 U.S.C. § 1983. He originally asserted claims on behalf of himself and his minor daughter, Atheia R., against Defendants Mendocino County Social Workers Nancy Kozak and Melissa Phillips, as well as the Mendocino County Department of Social Services. Plaintiff alleged that Defendants violated his constitutional right to familial association under the First and Fourteenth Amendments by writing a report and causing the state juvenile court to deny him mail communication with Atheia without due process of law. Plaintiff, who is African-America, also claimed an equal protection violation because the deprivation was allegedly based on a racial motive. Lastly, Plaintiff claimed his First Amendment rights were violated because Defendants wrote the report in retaliation for previous grievances he filed against Chuck Dunbar, another Mendocino County social worker.

In an Order dated September 22, 2009, the Court found that Plaintiff alleged cognizable First and Fourteenth Amendment claims against Defendant Kozak. (Sept. 22, 2009 Order at 5-6.) The Court also found that Plaintiff alleged a cognizable retaliation claim against Defendants Kozak and Phillips. (Id. at 6.) The Court, however, dismissed the claim against Defendant Mendocino County Department of Social Services upon concluding that Plaintiff had not alleged sufficient grounds for municipal liability. (Id. at 6-7.) The Court further dismissed Atheia as a named party to the action because Plaintiff, as a pro se litigant, had no authority to represent another other than himself. (Id. at

1  3-4.) On September 28, 2009, the complaint was served on Defendants Kozak and Phillips.
2  Defendants filed an answer, and Plaintiff filed a reply.[1]

3  On January 20, 2010, Defendants filed a motion for summary judgment on the grounds that
4  there is no triable issue of material fact, and that they are entitled to judgment as a matter of law.
5  (Defs.' Motion for Summary Judgment (MSJ) at 1.) On February 3, 2010, Plaintiff filed an
6  opposition with attached exhibits. On February 16, 2010, Defendants filed a reply. On February 16,
7  2010, Defendants filed an objection to Plaintiff's opposition and exhibits offered in support of the
8  opposition.

9  For the reasons discussed below, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

The following factual background is based on the allegations in Plaintiff's complaint, on Defendants' motion for summary judgment and the attached exhibits, Plaintiff's opposition and Defendants' reply. The facts are undisputed, unless otherwise noted.

Plaintiff is currently serving "three (20) to life sentence's [sic]." (Compl. at 11.) On September 13, 2005, the juvenile court of Mendocino County denied Plaintiff all visitation rights, including mail communication, with Atheia, his biological child. (Phillips Decl. ¶ 5.) The juvenile court based its decision on a report written for a dependency proceeding by Defendant Kozak. While Plaintiff does not claim Defendant Kozak fabricated evidence or included false statements in her report, he alleges that she "discriminated against Plaintiff when submitting . . . , a[n] eight-page report in the matter of Plaintiff's biological children: Jakeima [R.] . . . and Atheia [R.] . . . ."[2] (Compl. at 12.) Both children were "in [a] licensed foster home" during this time. (Id. at 13.)

On October 22, 1997, Jakeima and Atheia were taken into protective custody by the Mendocino County Department of Social Services. (Defs.' MSJ, Ex. A.) A detention hearing was

---

[1] On October 16, 2009, Plaintiff filed a motion called "Affirmation of Opposition to Motion for Summary Judgment." The Court construes this to be a response to Defendants' answer because Defendants had not yet filed their motion for summary judgment at that time.

[2] The Court notes that Plaintiff has other children who were also mentioned in his complaint, but they are irrelevant to the claims against the named Defendants.

2

held on October 27, 1997, and a jurisdiction hearing was held on August 19, 1998. (Id.) On November 18, 1998, at a disposition hearing, the juvenile court declared both children dependents of the court. (Id.) Additionally, the juvenile court ordered reunification services for Ms. Kinlaw, the mother of the children,[3] but denied reunification services for Plaintiff based on a report by Mr. Dunbar. (Id.) Because Plaintiff believed that Mr. Dunbar committed perjury and included false information in his report to the court during the November 18, 1998 disposition hearing, Plaintiff alleges he filed "a number of civil complaints" and grievances in 2003 against Mr. Dunbar, which he sent to various agencies, including the Department of Justice, the United States Attorney General and the Department of Health and Human Services.[4] (Compl. at 21-23.) On September 22, 1999, long term foster care was established as the permanent plan for both Jakeima and Atheia. (Defs.' MSJ, Ex. A.)

On August 9, 2005, the twelfth semi-annual review hearing of the permanent plan was held. (Id.) Prior to the hearing, notices were sent to Ms. Kinlaw and to Plaintiff, who were each represented by counsel at the hearing. (Id. at 2-3.) At that time, Defendants Kozak and Phillips were assigned to the case regarding Plaintiff's children. (Phillips Decl. ¶ 3.) As part of the proceeding, Defendant Kozak submitted a report in which she recommended that visitation with Jakeima and Atheia be restricted to only "letters designed to aid in the healing of the children" and that such letters be "approved by the social worker before distribution" for both parents. (Defs.' MSJ, Ex. A. at 17.) The court ordered the parents to have "[n]o face-to-face visits and no phone contact" for Jakeima, but permitted mail communication under direct supervision of social workers. (Id. at 19-20.) For Atheia, the court ordered no visitation for both Ms. Kinlaw and Plaintiff. (Id. at

---

[3] Reunification services were subsequently terminated for Ms. Kinlaw on April 22, 1999. (Defs' MSJ, Ex.A.)

[4] Defendants dispute Plaintiff's claims by stating that no civil complaint has ever been filed by Plaintiff against Mr. Dunbar. (Chapman Decl. ¶¶ 4-6; Meek Decl. ¶ 3; Dunbar Decl. ¶¶ 3-4.) The Court notes that Mr. Dunbar is not a named Defendant in the instant action. In Plaintiff's opposition, he alleges that he filed letter grievances and that his "letter of complaint" sent to Mr. Dunbar "was taken as a threat, therefore, co-workers Defendants Kozak and Phillips, retaliated using Plaintiff['s] children as devises [sic] to do so . . . ." (Opp'n at 11-12.) Defendants do not dispute that Plaintiff filed these grievances.

1    22.) At this hearing, Atheia "requested permission from the Superior Court for the State of

2    California, County of Mendocino . . . to have letter contact with her father . . . ." (Defs.' MSJ, Ex. B

3    at 4-5.)

4         On September 13, 2005, a special hearing was held to address visitation issues. (Defs.' MSJ,

5    Ex. B.) Prior to the hearing, notices were sent to Ms. Kinlaw and Plaintiff, and, again, each were

6    represented by counsel at the hearing. (Id. at 2-3.) Defendants Kozak and Phillips were still

7    assigned to the case regarding Plaintiff's children at that time. (Phillips Decl. ¶ 3.) As part of this

8    hearing, Defendant Kozak issued a report entitled, "Report and Recommendation of the Department

9    of Social Services Regarding Visitation and Contact with the Biological Parents." (Defs.' MSJ, Ex.

10    B. at 1-5.) Defendant Kozak stated that Jakeima "has consistently requested permission from this

11    social worker to contact his biological mother" and that Jakeima "would very much like to continue

12    to have contact with his mother." (Id. at 3-4.) Defendant Kozak stated that "Jakeima is almost

13    sixteen years of age and developing a sense of himself and who he is in the world" and that "Ms.

14    Kinlaw may be able to provide [him] with family knowledge he so desperately seeks." (Id. at 4.)

15    Accordingly, Defendant Kozak recommended that "Jakeima be allowed to have one telephone

16    contact per week with Ms. Kinlaw." (Id.)

17        For Atheia, the report stated,

18-20    This social worker does not recommend letter contact for Atheia with Arthur Kinlaw at this time. Mr. Kinlaw is incarcerated for three 20 year to life sentences running concurrently. Atheia is fourteen years of age and has worked very hard to make significant changes in her young life. The undersigned does not believe it is in the best interest of this young lady to receive communication from Mr. Kinlaw.

21    (Id. at 4-5.) The juvenile court adopted Defendant Kozak's recommendation and ordered one

22    monitored telephone contact per week between Jakeima and Ms. Kinlaw, and granted Atheia

23    monitored mail communication with Ms. Kinlaw. (Phillips Decl. ¶ 5.) The court, however, denied

24    Atheia's request for mail communication with Plaintiff. (Id.)

25        On January 23, 2007, Plaintiff filed the instant civil rights action.

26                                   **DISCUSSION**

27    **I.**    **Legal Standard For Summary Judgment**

28        Summary judgment is properly granted when no genuine and disputed issues of material fact

remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hospitals, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the

1 dispute exists." Bhan, 929 F.2d at 1409.

2 If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

6 If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

## II. Evidence Considered

A district court may only consider admissible evidence in ruling on a motion for summary judgment. See Fed. R. Civ. P. 56(e); Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002). Unauthenticated documents and hearsay evidence are not admissible, and consequently, may not be considered on summary judgment. See id. at 773-74, 778.

Defendants have submitted declarations by Defendant Phillips, Mr. Dunbar and Pat Meek, who is the custodian of records as to personnel/grievance matters at Mendicino County Health and Human Services Agency. They have also submitted an affidavit of concurrence by Defendants' attorney Douglas Losak and a declaration by his secretary, Julie Chapman. Defendants have submitted a request for judicial notice in support of their motion for summary judgment. Attached to this request, Mr. Losak has submitted a status review report prepared by Defendant Kozak on July 28, 2005 for the August 9, 2005 dependency proceeding, which includes case plan updates, individualized education program and school records, as well as other medical and health documents for Jakeima and Atheia. Additionally, Mr. Losak has submitted a status report prepared by Defendant Kozak on September 8, 2005 for the September 13, 2005 hearing. Mr. Losak states that the aforementioned submitted exhibits are "true and correct copies" of what they purport to be. (Req. for Judicial Notice at 1.) The Court will consider the aforementioned exhibits as properly authenticated; therefore, Defendants' request for judicial notice in support of their motion is GRANTED. The Court notes that Mr. Losak has also submitted the juvenile court's orders for both hearings. Defendants have submitted unsigned orders for the August 9, 2005 and September 13,

2005 hearings. However, the evidence in the record sufficiently demonstrates that these unsigned orders were issued by the juvenile court at both hearings. (Compl. at 12-13; Phillips Decl. ¶¶ 4, 5.) Therefore, both orders will also be considered by the Court in connection with Defendants' motion.

Plaintiff filed a complaint, which he signed under penalty of perjury. Also in the record is Plaintiff's opposition, which he also signed under penalty of perjury. Attached to the opposition, Plaintiff submitted the following exhibits: letters dated February 19, 2003 and August 1, 2003, from Steve Jackson of the Mendocino County Public Defender's Office; greetings cards written by Plaintiff to his children entitled, "A Rose" and "A Blessed Morning"; letters reportedly from "Margaret Law" to Defendant Kozak dated May 23, 2004 and May 30, 2004; a letter from Mendocino County Superior Court to Plaintiff dated January 27, 2006; a four-page document entitled "Affidavit of Service"; a six-page document entitled "Affidavit of Service" dated April 22, 2007; a letter from Plaintiff to Heather Hunter dated February 6, 2006; a March 25, 2003 letter to the United States Department of Health and Human Services; and a letter to David Shapiro, acting United States Attorney, dated March 25, 2003.

Defendants filed an objection to the evidence offered in support of Plaintiff's opposition and his attached exhibits. Defendants request that the Court strike the entire opposition on grounds that the pleading violates this Court's September 22, 2009 Order to comply with Rules 3-4(c)(2)-(3), and 7-4(a)(2)-(5), (b), of the Northern District of California Civil Local Rules. The Court overrules this objection and denies Defendants' request to strike Plaintiff's opposition. Defendants also object to the exhibits attached to Plaintiff's opposition. However, none of these exhibits is necessary to adjudicate the instant motion. For these reasons, Defendants' objections are overruled as moot.

**III.     Legal Claims**

     **A.     Absolute Immunity**

Defendants argue that summary judgment is warranted because social workers are entitled to absolute immunity for their acts of writing reports and making recommendations to the juvenile court in a child dependency hearing. Defendants argue that recommendations issued under court order are "discretionary function[s], done within the context of a judicial proceeding" and therefore absolute immunity applies. (Defs.' MSJ at 8.)

### 1. **Applicable Legal Standard**

The United States Supreme Court has recognized that some officials perform special functions which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability. Buckley v. Fitzsimmons, 509 U.S. 259, 268-69 (1993). This immunity extends to individuals performing functions that are "critical to the judicial process itself." Miller v. Gammie, 335 F.3d 889, 896 (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). Prosecutors are absolutely immune in "'initiating a prosecution and in presenting the State's case.'" Id. at 895-96 (quoting Imbler, 424 U.S. at 431). Accordingly, "social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." Meyers v. Contra Costa County Dep't of Social Servs., 812 F.2d 1154, 1157 (9th Cir. 1987). In making this determination, the Supreme Court evaluates the "nature of the function performed, not the identity of the actor who performed it." Buckley, 509 U.S. at 269; see also Miller, 335 F.3d at 898.

Absolute immunity could extend to the initiation of dependency proceedings to make a child a dependent of the state. See Miller, 335 F.3d at 897-98; Meyers, 812 F.2d at 1156-57. There also may be other submissions to the court which are functionally similar to the conduct recognized at common law to be protected by absolute prosecutorial immunity. See Miller, 335 F.3d at 897; Meyers, 812 F.2d at 1156-57. However, to the extent social workers make discretionary decisions and recommendations that are not functionally similar to prosecutorial or judicial decisions, only qualified, not absolute immunity, is available. Miller, 335 F.3d at 898. Thus, social workers are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit they signed under penalty of perjury because such actions are not similar to discretionary decisions about whether to prosecute. See Greene v. Camreta, 588 F.3d 1011, 1035-36 (9th Cir. 2009) (reversing district court's finding of immunity for social worker where plaintiff submitted evidence that social worker included false statements in his affidavit requesting a protective custody order); Beltran v. Santa Clara County, 514 F.3d 906, 908 (9th Cir. 2008) (en banc) (reversing district court's finding of absolute immunity for

social worker's investigatory conduct and overruling Circuit precedent in Doe v. Lebbos, 348 F.3d 820 (9th Cir. 2003)). "Even actions taken with court approval or under a court's direction are not in and of themselves entitled to quasi-judicial, absolute immunity." Miller, 335 F.3d at 897.

"[B]eyond those functions historically recognized as absolutely immune at common law, qualified and only qualified immunity exists." Id. at 897. The burden ultimately rests on the official claiming absolute immunity to identify the common-law counterpart to the function that the official asserts is shielded by absolute immunity. Id.

### 2. Analysis

Defendants argue that "Plaintiff is not alleging Defendants made false statements or fabricated evidence" but rather, that "he is complaining of Defendants' recommendation in a court-ordered review of his children's dependency hearings." (Defs.' MSJ at 7.) However, Defendants have failed to identify the common-law counterpart to the functions that Defendants assert are shielded by absolute immunity. In fact, neither party has presented evidence as to Defendants' precise functions that may or may not give rise to liability. See, e.g., Miller, 335 F.3d at 898 (stating that the nature of the functions the defendants allegedly performed needs to be sufficiently outlined before determining whether absolute immunity applies). Because the application of absolute immunity is highly factual, further development of the record would ordinarily be required in this case. The Court, however, concludes that no further development of the record is necessary at this time because as set forth in the following sections, Defendants are entitled to qualified immunity as to Plaintiff's First and Fourteenth Amendment Claims, see Miller, 335 F.3d at 898, and to summary judgment on the remaining claims.

### B. First and Fourteenth Amendment Claims

Plaintiff alleges that Defendant Kozak violated his constitutional rights by writing a report and causing the juvenile court to deny him mail communication with Atheia, thus depriving him of his First and Fourteenth Amendment rights to familial association.

"It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983." Lee v. City of Los Angeles, 250 F.3d 668,

685 (9th Cir. 2001) (internal citation omitted). Subsumed in this liberty interest is the right for parents and children to live together without undue governmental interference. See Santosky v. Kramer, 455 U.S. 745, 753 (1982); Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000). Furthermore, parents have a constitutionally protected liberty interest in making decisions about the care, custody, and control of their children. Miller v. Cal., 355 F.3d 1172, 1175 (9th Cir. 2004). When the state has a legitimate interest in interfering with a parent-child relationship, the state may legitimately interfere so long as it provides "fundamentally fair procedures." Kramer, 455 U.S. at 754.

Defendant Kozak argues that summary judgment is warranted because, as a social worker, she is entitled to qualified immunity as to the familial association claim.

### 1. **Applicable Legal Standard**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by Saucier and holding that court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case). Where there is no clearly established law that certain conduct constitutes a constitutional violation, the defendant cannot be on notice that such conduct is unlawful. Rodis v. City and County of S.F., 558 F.3d 964, 970 (9th Cir. 2009) (applying Pearson to find no clearly established right before evaluating whether there was a deprivation). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533

U.S. at 202. "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)).

### 2. **Analysis**

Under the first prong of the qualified immunity analysis, Plaintiff must have suffered a constitutional violation. Defendants argue that "Plaintiff does not have a constitutional right to familial association" because he is "incarcerated in prison, is a non-custodial parent, and had been denied reunification services by the juvenile court." (Defs.' MSJ at 8.) More specifically, Defendants argue that "Plaintiff does not have a constitutional right to have mail visitation with his children." (Id. at 9.) Defendants have not cited any authority directly on point to support this assertion. Indeed, the Supreme Court has recognized that the Constitution protects "certain kinds of highly personal relationships." Roberts v. United States Jaycees, 468 U.S. 609, 618, 619-620 (1984). Outside the prison context, there is some discussion in Supreme Court cases of a right to maintain certain familial relationships, including association among members of an immediate family. See generally Moore v. East Cleveland, 431 U.S. 494 (1977) (plurality opinion); Meyer v. Neb., 262 U.S. 390 (1923). However, the Supreme Court has not held that any right to intimate association is altogether terminated by incarceration or is always irrelevant to claims made by prisoners. Overton v. Bazzetta, 539 U.S. 126, 131 (2003). In any event, the Court need not decide whether a denial of mail communication violated Plaintiff's constitutional right because at the time Defendants issued their recommendations, the alleged violation was not clearly established. See Pearson, __ U.S. __, 129 S. Ct. at 818.

The record does not show that Defendant Kozak fabricated evidence or made false statements in her report to deny mail communication between Plaintiff and Atheia. Instead, the record shows that Defendant Kozak supported her recommendation by submitting status reports for the August 9, 2005 and September 13, 2005 hearings. Defendant Kozak argues she acted reasonably and made appropriate recommendations regarding parental communication. For example, Defendant Kozak reassessed, consulted and maintained contact with all the children and their caretakers throughout the dependency proceedings. (Defs.' MSJ, Ex. A. at 5.) Defendant Kozak met with the

11

children, including Atheia, on a monthly basis. (Id.) For Atheia specifically, Defendant Kozak had face-to-face meetings with her on January 12, 2005, February 15, 2005, April 21, 2005, May 20, 2005, June 10, 2005, and July 1, 2005. (Id. at 6.)

Furthermore, in Defendant Kozak's status report for the August 9, 2005 hearing, she stated that Atheia "made a great deal of progress during her placement at Lincoln Child Center" and upon graduation, moved in with her former foster parents with whom Atheia maintained contact and had always sought reunification. (Id. at 12-13.) The report states:

> This social worker remains cautiously optimistic about Atheia and her future. Lincoln Child Center provided Atheia with structure, support, and a healthy, emotional environment. Atheia worked very hard while at Lincoln and made significant progress in her behaviors and level of maturity.

(Id. at 13.)

The record shows that Defendant Kozak did not recommend mail communication between Plaintiff and Atheia at the September 13, 2005 hearing because of Atheia's circumstances at the time and the fear that contact with Plaintiff would jeopardize Atheia's progress. (Defs.' MSJ at 9.) Defendant Kozak stated that "Atheia is fourteen years old and has worked very hard to make significant changes in her young life." (Defs.' MSJ, Ex. B. at 5.) Defendant Kozak claimed that Atheia had more potential for growth. For example, Atheia's teacher at Lincoln Child Center had reported that Atheia would likely catch up in education if "she is provided with a consistent school placement and academic support." (Defs.' MSJ, Ex. A. at 13.) Additionally, Atheia was receiving help from her therapist, Rhonda M. Lawrence, in dealing with the "deep emotional pain of [her] childhood." (Id.) While Plaintiff understandably may disagree with the social workers' recommendations, he has not presented any evidence that such recommendations were based on fabricated evidence or false statements. Absent such evidence, Plaintiff has not raised a triable issue of fact regarding his constitutional claims.

Even assuming Defendant Kozak's recommendation to deny mail communication was unreasonable, Plaintiff has not provided any clearly established law indicating that it is unconstitutional to make such a recommendation, especially in light of the discretionary functions of social workers. It would not have been clear to a reasonable social worker that the conduct was unlawful in this situation. Therefore, Defendant Kozak would not have been on notice that her

12

conduct was unlawful. See Rodis, 558 F.3d at 970. Accordingly, Defendant Kozak is entitled to qualified immunity with respect to Plaintiff's familial association claim and is entitled to summary judgment as a matter of law.

**C.    Due Process Claim**

Plaintiff argues that he was denied due process of law because Defendants Kozak and Phillips "never allowed Plaintiff, . . . . to talk to them neither [sic] by phone or by mail." (Opp'n at 4.) He further claims that the recommendation to deny mail communication was written based on their "own biased opinions because they did and have not taken the opportunity to get to know the man they wrote about and denied services to." (Id. at 4-5.)

**1.    Applicable Legal Standard**

The Court must determine what process is due before a protected interest may be taken away. See Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976); Hewitt v. Grabicki, 794 F.2d 1373, 1380 (9th Cir. 1986). An essential principle of due process is that a deprivation of life, liberty or property "'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (citation omitted). To determine what process is due, the Court must balance the risk of an erroneous deprivation, the government's interest in providing specific procedures, and the strength of the individual's interest. Erickson v. United States, 67 F.3d 858, 863 (9th Cir. 1995); see also Mathews, 424 U.S. at 334-35; Hewitt, 794 F.2d at 1380. This determination is a matter of federal law; it is not restricted by any specific procedures mandated by state statute or regulation. Mathews, 424 U.S. at 334-35; Quick v. Jones, 754 F.2d 1521, 1523 (9th Cir. 1985).

**2.    Analysis**

Here, Plaintiff cites no legal authority supporting his proposition that due process requires social workers to remain in contact "by phone or by mail" before issuing a report in a child dependency proceeding. Due process only requires that certain procedures are provided to ensure that a parent's liberty interests are adequately protected. See Lee, 250 F.3d at 685. The record reflects that Plaintiff was given ample notice of the hearing and an opportunity to be heard. (Defs.' MSJ, Ex. A at 2-3; Defs.' MSJ, Ex. B at 2-3.) Importantly, Plaintiff was represented by counsel at

13

the August 9, 2005 hearing as well as the September 13, 2005 hearing when Atheia's request for mail communication was denied. (Id.; Reply at 2.) Because Plaintiff received proper notice and was represented by counsel, the Court finds that Plaintiff received the requisite process that he was due. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's due process claim.

### D. Equal Protection Claim

Plaintiff claims an equal protection violation because the alleged deprivation stemming from Defendants' actions was based on a racial motive. Plaintiff argues that Ms. Kinlaw, who is white and on parole, was allowed phone contact with his children, while Defendants chose not to recommend similar communication for Plaintiff "due to being incarcerated and because he is black" and also because he has a "psychiatric condition." (Compl. at 19, 29.)

#### 1. Applicable Legal Standard

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). To state a claim for relief under the Equal Protection Clause, a plaintiff must allege that the defendant acted at least in part because of the plaintiff's membership in a protected class. See Serrano v. Francis, 345 F.3d 1071, 1081-82 (9th Cir. 2003). Proof of a discriminatory intent or purpose is also required. City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found., 538 U.S. 188, 194 (2003). A conclusory statement of bias is insufficient to carry a non-moving party's burden. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Thornton v. City of St. Helens, 425 F.3d 1158, 1167 n. 4 (9th Cir. 2005).

#### 2. Analysis

Plaintiff claims that Defendants' recommendation to deny mail communication was based on their own "bias[ed] opinion . . . that due to Plaintiffs ethnicity . . .[he was] a danger, and would be detrimental to [Atheia]." (Opp'n at 5.) Plaintiff further claims that Defendant Kozak's September 13, 2005 report stated, "Jakeima reported that he felt the court was trying to keep him away from his

family when he was younger." (Compl. at 19.) Plaintiff adds:

> Jakeima was allowed phone contact with his mother . . . who is on parole in the state of New York, for accessory to murder, and who happens to be caucastion [sic]. Whereas the Plaintiff is black and continully [sic] denied phone contact with any of his children while in the care of Mendocino County Department of Social Services.

(Id.)

However, Jakeima's statement was made in the context of a conversation regarding Jakeima's attempts to contact his mother and siblings, not Plaintiff. (Defs.' MSJ, Ex. B.) In fact, Jakeima did not request contact with Plaintiff. (Id.) Furthermore, the evidence in the record demonstrates that both parents were denied contact of some sort with the two children. Defendants state,

> Mother did not request mail contact with A.R., and Plaintiff did not request phone contact with J.R. and J.R. did not request phone contact with Plaintiff. Therefore to claim that one was given greater visitation than the other based on race is baseless, especially when equal visitation was never requested.

(Defs.' MSJ at 5.)

While Plaintiff presented a cognizable claim for a violation of equal protection based on an allegation that Defendants' recommendations were racially motivated, that allegation alone will not survive a motion for summary judgment. Plaintiff's claim is entirely conclusory and he has come forward with nothing to even suggest that his denial was racially motivated even in part. His conclusory allegations and mere assertions of racial prejudice are insufficient to overcome a motion for summary judgment. Fed. R. Civ. P. 56; see Taylor, 880 F.2d at 1045; see also Preston v. Heckler, 734 F.2d 1359, 1373 (9th Cir. 1984); Keniston v. Roberts, 717 F.2d 1295, 1300 (9th Cir. 1983). Plaintiff has not produced any evidence indicating that Defendants harbored a discriminatory intent or racially charged motive in issuing their recommendations. Accordingly, the Court finds that Defendants have shown that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence" to support Plaintiff's claim of an equal protection violation based on race. Celotex, 477 U.S. at 325. Further, when the facts are viewed in the light most favorable to Plaintiff, he has not produced "specific evidence, through affidavits or admissible discovery material" to show that a dispute exists regarding Defendants' motives in

United States District Court
For the Northern District of California

1 issuing the recommendations. See Bhan, 929 F.2d at 409. Accordingly, Defendants are entitled to
2 summary judgment as to Plaintiff's equal protection claim.

### E. Retaliation Claim

Plaintiff alleges that Defendants "retaliated against [him] through his children" because they were aware of the grievances he filed against Mr. Dunbar. (Compl. at 20.) Plaintiff claims that he filed grievances alleging that Mr. Dunbar made false statements in a report submitted to the Mendocino County juvenile court in 1998 at the disposition hearing, that led the court to deny Plaintiff the ability to correspond with his children. (Id. at 20-25.)

#### 1. Applicable Legal Standard

A claim may be stated under § 1983 where a plaintiff alleges retaliation by state actors for the exercise of his First Amendment rights. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). The plaintiff must show that the type of activity he was engaged in was protected by the First Amendment and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts. See id. at 287. Retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000). In order to create a genuine issue of material fact on retaliatory motive in the First Amendment context, a plaintiff must establish "in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3) evidence that the defendant's proffered reason for the adverse action was pretextual." Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009) (internal citation and emphasis omitted). A plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action. Hartman v. Moore, 547 U.S. 250, 259 (2006). The requisite causation must be but-for causation, without which the adverse action would not have been taken. Upon a prima facie case of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of. Id. at 260; Wilkie v. Robbins, 551 U.S. 537, 560 & n.10 (2007) (rejecting argument that an ill motive alone supports a retaliation

16

claim; "proof that the action was independently justified on grounds other than the improper one defeats the claim."). If there is a finding that retaliation was not the but-for cause of the action complained of, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind. Harman, 547 U.S. at 259.

### 2. Analysis

As a threshold matter, Plaintiff has established as a matter of law that his conduct -- the filing of grievances against Mr. Dunbar -- is constitutionally protected under the First Amendment.[5] See O'Keefe v. Van Boenly, 82 F.3d 322, 325 (9th Cir. 1996) (stating that the right to petition the government for redress of grievances extends to administrative arms and units of the government). However, for the reasons stated below, the Court concludes that Plaintiff fails to show that Defendants harbored a retaliatory motive or that any retaliatory motive was the cause of the denial of communication between him and his children.

Plaintiff does not demonstrate that "in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3) evidence that the defendant's proffered reason for the adverse action was pretextual." Corales, 567 F.3d at 568. Plaintiff claims that he sent grievances against Mr. Dunbar to various agencies, and that Defendants retaliated against him because of these grievances. (Opp'n at 11-12.) First, there is no evidence that Defendants retaliated against Plaintiff -- or even knew of these grievances -- beyond Plaintiff's mere assertions. Even assuming that Defendants knew of these grievances, there is a lack of proximity in time between Plaintiff's protected speech in 2003 and the alleged retaliatory decision to deny communication in 2005. Finally, Plaintiff does not show that

---

[5] As stated above, Defendants presented affidavits attesting that to their knowledge, Plaintiff has not filed complaints against Mr. Dunbar. (Chapman Decl. ¶¶ 4-6; Dunbar Decl. ¶¶ 3-4; Meek Decl. ¶ 3.) Therefore, they argue that "[s]ince Plaintiff did not file a lawsuit or complaint against Mr. Dunbar, there can be no retaliation." (Defs.' MSJ at 9.) However, Plaintiff has alleged in his opposition that he filed grievances against Mr. Dunbar, and Defendants do not dispute this. Therefore, the Court rejects Defendants' argument because Plaintiff has met the core requirement of the retaliation analysis, that is, by establishing that the filing of grievances is constitutional protected under the First Amendment.

17

Defendants "expressed opposition" to the grievances, or that any of the reasons for their recommendations were pretextual. Accordingly, Plaintiff cannot demonstrate that Defendants harbored a retaliatory motive.

Even assuming that Defendants were motivated by some retaliatory intent, in light of the evidence presented, the undisputed facts, and taking the remaining facts presented by the Plaintiff as true, the Court concludes that any retaliatory animus was not the but-for cause of the creation of their recommendations. See Hartman, 547 U.S. at 259. Defendants' individual assessment of each child's needs and progress are reasons independent of any potential retaliatory motive in recommending limited or no communication between Plaintiff and his children. Plaintiff has failed to dispute those reasons or proffer any explanation as to why those reasons are not sufficient to defeat summary judgment as to this claim.

The Court finds that Defendants have shown that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence" to support Plaintiff's claim of retaliation. Celotex, 477 U.S. at 325. Further, when the facts are viewed in the light most favorable to Plaintiff, he has not produced "specific evidence, through affidavits or admissible discovery material" to show that a dispute regarding Defendants' motives exists. See Bhan, 929 F.2d at 1409. Accordingly, Defendants are entitled to summary judgment as to Plaintiff's retaliation claim.

## **CONCLUSION**

Defendants' motion for summary judgment (docket no. 44) is GRANTED as to all claims. The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file.

This Order terminates Docket no. 44.

IT IS SO ORDERED.

DATED: 3/16/10

SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ARTHUR KIRLAW et al,

Case Number: CV07-00430 SBA

Plaintiff,

P:\PRO-SE\SBA\CR.07\Kinlaw0430.grantMSJ.wpd 18

|   |   |   |
|---|---|---|
| 1 | v. | **CERTIFICATE OF SERVICE** |
| 2 | NANCY KOZAK et al, | |
| 3 | Defendant. / | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 17, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Arthur Kinlaw Den:00A3863
Attica Correctional Facility
P.O. Box 149
Attica, NY 14011

Dated: March 17, 2010

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.07\Kinlaw0430.grantMSJ.wpd